GEORGIA, MUSCOGEE COUNTY
SUPERIOR/STATE COURT
eFILED
7/8/2022 11:46 AM
DANIELLE F. FORTE, CLERK

## IN THE STATE COURT OF MUSCOGEE COUNTY
## STATE OF GEORGIA

AMY SATTERFIELD AND JERROD
SATTERFIELD,

*Plaintiffs,*

v.

MIDWAY EXPRESS LTD.,

*Defendant.*

Civil Action

File No. _____ SC2022CV000891

JURY TRIAL DEMANDED

---

### COMPLAINT FOR DAMAGES

---

NOW COME PLAINTIFFS Amy and Jerrod Satterfield and file this Complaint as
follows:

### The Parties

1.

Defendant MIDWAY EXPRESS LTD. is a foreign corporation.

2.

On March 12, 2021, and prior thereto, Defendant MIDWAY EXPRESS LTD. was in the
business of hauling goods for compensation.

3.

On March 12, 2021, and prior thereto, Defendant MIDWAY EXPRESS LTD. routinely
and regularly hauled goods to and through the State of Georgia in interstate commerce.

4.

On March 12, 2021, and prior thereto, Defendant MIDWAY EXPRESS LTD. was
engaged in interstate commerce.

5.

On March 12, 2021, and prior thereto, Defendant MIDWAY EXPRESS LTD. was a
"Motor Carrier" as defined in 49 CFR § 390.5T.

6.

On March 12, 2021, and prior thereto, Defendant MIDWAY EXPRESS LTD. was a
"For-hire motor carrier" as defined in 49 CFR § 390.5T.

7.

On March 12, 2021, and prior thereto, Defendant MIDWAY EXPRESS LTD. was a motor carrier that owned, leased, controlled, operated, or managed a commercial motor vehicle used in the business of transporting property in interstate commerce for hire over a public highway in the State of Georgia.

8.

On March 12, 2021, Defendant MIDWAY EXPRESS LTD. was an interstate "motor carrier" as defined in O.C.G.A. § 40-1-100 et seq.

9.

At all relevant times, Defendant MIDWAY EXPRESS LTD. was subject to the Federal Motor Carrier Safety Act, the Federal Motor Carrier Safety Regulations, the Motor Carrier Safety Regulations adopted by the Georgia Department of Public Safety, and all traffic laws of the State of Georgia.

**Jurisdiction and Venue**

10.

On March 12, 2021, and on the date of filing this Complaint, Defendant MIDWAY EXPRESS LTD. was not authorized by the Secretary of State of Georgia to conduct business in Georgia.

11.

On March 12, 2021, and on the date of filing this Complaint, Defendant MIDWAY EXPRESS LTD. regularly conducted business in Georgia.

12.

Pursuant to O.C.G.A. § 40-1-117(a), the Secretary of State of Georgia is conclusively deemed the agent for service of process for Defendant MIDWAY EXPRESS LTD. as a result of its failure to maintain authority to transact business in the State of Georgia through the Secretary of State of Georgia.

13.

Pursuant to Federal Regulations, Defendant MIDWAY EXPRESS LTD. may also be served with process by delivering a copy of the summons and complaint to its BOC-3 process agent: CODY B GILLIES, 5704 VETERANS PARKWAY, COLUMBUS GA, 31904.

14.

Defendant MIDWAY EXPRESS LTD. is subject to the jurisdiction of this Court.

**Factual Allegations**

15.

On March 12, 2021, Defendant was subject to the Federal Motor Carrier Safety Act, the Federal Motor Carrier Safety Regulations, the Motor Carrier Safety Regulations adopted by the Georgia Department of Public Safety, and all traffic laws of the State of Georgia.

16.

On March 12, 2021, Defendant's employee and driver Quentin Gray was operating a tractor and was towing a tanker trailer in Putnam County, Georgia, for the benefit of Defendant MIDWAY EXPRESS LTD.

17.

The tractor was owned or leased by defendant MIDWAY EXPRESS LTD.

18.

The tractor was placarded to defendant MIDWAY EXPRESS LTD.

19.

At approximately 3:54 p.m., Defendant's driver Quentin Gray was driving his loaded tractor trailer in Putnam County, Georgia.

20.

Defendant's driver Quentin Gray failed to yield while turning left at a traffic light at the intersection of Highway 441 and Highway 129 in Eatonton, Georgia.

21.

Highway 441 is a four (4) lane highway, with two travel lanes southbound, two travel lanes northbound, and with turn lanes at the intersection with Highway 129.

22.

Defendant's driver Quentin Gray was attempting to turn left from 441, crossing over two southbound travel lanes and the center turn lane, to enter the westbound lane of Highway 129.

23.

Defendant's driver Quentin Gray trailer blocked the two southbound lanes of traffic when he did not have the right of way.

24.

Plaintiff Amy Satterfield was driving south on 441.

25.

Plaintiff Amy Satterfield did not perceive the hazard the trailer blocking the southbound travel lanes of highway 441 created until it was too late to avoid a collision. Though she attempted a maneuver to avoid a crash, her vehicle collided with Defendant's driver Quentin Gray's tractor unit.

26.

Plaintiff Amy Satterfield was seriously injured as a result of the crash requiring emergency medical transportation and surgery.

27.

Plaintiff Amy Satterfield requires additional medical treatment for the injuries sustained due to the collision and will incur additional medical expenses of an undetermined amount.

28.

Defendant's driver Quentin Gray failed to exercise due care while operating the MIDWAY EXPRESS LTD. tractor-trailer and was driving the MIDWAY EXPRESS LTD. tractor-trailer in a careless, negligent, and dangerous manner.

29.

Reasonable commercial drivers do not initiate a turn across travel lanes when doing so will or is likely to impede the flow of traffic.

30.

The crash was caused by the negligence of the Defendant and the careless driving of Defendant's driver Quentin Gray.

### First Cause of Action
*Negligent Qualifying, Hiring, Training, Supervision,*
*Retention, and Entrustment by MIDWAY EXPRESS LTD.*

31.

Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth fully herein.

32.

The operation of a commercial motor carrier, including the qualifying, hiring, training, supervising and retention of its commercial motor vehicle drivers requires exercising care and skill to be done safely, or it is foreseeable that serious harm and injury will occur to the traveling public.

33.

Defendant MIDWAY EXPRESS LTD. was required to qualify and hire safe truck drivers and to teach and train those drivers to enable each of them to understand and obey the rules and regulations contained in the Federal Motor Carrier Safety Regulations, the Motor Carrier Safety Regulations of the Georgia Department of Public Safety, the Commercial Driver's License Manual, minimal industry safety rules, and applicable state and local traffic laws to carry out their duties and obligations thereunder.

34.

Defendant MIDWAY EXPRESS LTD. had a duty to promulgate and enforce rules and regulations to ensure its drivers and vehicles were reasonably safe, and negligently failed to do so.

35.

Defendant MIDWAY EXPRESS LTD. had a duty to act reasonably in qualifying, hiring, training, retaining and supervising Defendant's driver Quentin Gray as an employee or agent working for it in the safety sensitive position of a commercial motor vehicle driver.

36.

Defendant MIDWAY EXPRESS LTD. had a duty to act reasonably in entrusting a commercial motor vehicle into the custody, care, and control of Defendant's driver Quentin Gray.

37.

Defendant MIDWAY EXPRESS LTD. failed in its duties to reasonably qualify, hire, train, retain, and supervise Defendant's driver Quentin Gray was therefore negligent.

38.

Defendant MIDWAY EXPRESS LTD. negligently entrusted a commercial motor vehicle into the custody, care, and control of Defendant's driver Quentin Gray.

39.

The acts and failures to act of Defendant MIDWAY EXPRESS LTD. resulted in foreseeable harm to Plaintiff Amy Satterfield.

40.

The negligence of Defendant MIDWAY EXPRESS LTD. was the direct and proximate cause of injury to Plaintiff Amy Satterfield.

**Second Cause of Action**
*Statutory Violations of MIDWAY EXPRESS LTD.*

41.

Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth fully herein.

42.

Defendants MIDWAY EXPRESS LTD. violated -- and encouraged Defendant's driver Quentin Gray to violate -- state and federal statutes and regulations, including but not limited to 49 C.F.R. §§350 to 399.

43.

The statutory violations of Defendants MIDWAY EXPRESS LTD. individually and in combination directly and proximately caused injury to Plaintiff Amy Satterfield.

### Third Cause of Action
*Vicarious Liability of MIDWAY EXPRESS LTD.*

44.

Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth fully herein.

45.

On March 12, 2021, Defendant MIDWAY EXPRESS LTD. was engaged in a business affecting interstate commerce.

46.

On March 12, 2021, Defendant MIDWAY EXPRESS LTD. owned or leased the 2001 Pteterbilt Tractor (VIN: 4V4NC9EHXKN203021) operated by Defendant's driver Quentin Gray, a commercial motor vehicle used in its business.

47.

On March 12, 2021, Defendant MIDWAY EXPRESS LTD. owned or leased the 2001 Trailer (Tag No.: 74557J) operated by Defendant's driver Quentin Gray, a commercial motor vehicle used in its business.

48.

On March 12, 2021, Defendant MIDWAY EXPRESS LTD. was an "Employer" as defined in 49 CFR § 390.5T.

49.

On March 12, 2021, Defendant's driver Quentin Gray was an "Employee" as defined in 49 CFR § 390.5T.

50.

At all times material to this case, Defendant's driver Quentin Gray was acting within the course and scope of his employment or agency with Defendant MIDWAY EXPRESS LTD.

51.

Under the principles of respondeat superior, actual agency, apparent agency, placard liability and/or lease liability, Defendant MIDWAY EXPRESS LTD. is vicariously liable for the negligent acts and omissions of Defendant's driver Quentin Gray which led to the injuries of Plaintiff Amy Satterfield.

### Fourth Cause of Action
*Claim for Loss of Consortium*

52.

Plaintiffs incorporate herein by reference the allegations of the previous paragraphs as if each were fully set forth herein in their entirety.

53.

This Complaint is also brought to recover damages sustained by Plaintiff Jerrod Satterfield due to the loss of consortium of his spouse, Amy Satterfield.

54.

Defendants having been negligent as described above and said negligence having resulted in severe injury to Amy Satterfield, Jerrod Satterfield is entitled to recover of Defendant for his loss of consortium as the legal spouse of Amy Satterfield.

## Relief Sought
55.

Plaintiff Amy Satterfield has incurred medical expenses as a proximate result of the collision.

56.

Plaintiff Amy Satterfield has lost income in an amount to be determined at trial as a proximate result of the collision.

57.

Plaintiff Amy Satterfield has endured pain and other consequential damages as a proximate result of the collision.

58.

Plaintiff Amy Satterfield is entitled to recover damages from Defendants for medical expenses, past and future, loss of income and other actual damages to the extent permitted by law.

59.

Plaintiff Amy Satterfield is entitled to recover damages for the pain and suffering he has endured and will continue to endure

60.

Plaintiff Jerrod Satterfield is entitled to recover loss of consortium.

**WHEREFORE** plaintiffs demand a trial by jury of twelve and judgment against Defendant as follows:

(a)     That Plaintiff Amy Satterfield recover general damages; special damages; direct and consequential damages including medical bills, pain and suffering, lost income, and other expenses in an amount to be determined at trial;

(b)     That the verdict rendered against Defendant MIDWAY EXPRESS LTD. include punitive and exemplary damages in an amount to be determined at trial;

(c)     That Plaintiff Jerrod Satterfield recover damages for loss of consortium;

(d)     That Plaintiffs recover all costs of this litigation; and

(e)     That Plaintiffs receive such other and further relief as the Court deems just and proper.

This 8th day of July, 2022.

FRIED GOLDBERG LLC

By:_____

BRIANT G. MILDENHALL
Georgia Bar No. 790507
*Attorney for Plaintiffs*

3550 Lenox Road, N.E., Suite 1500
Atlanta, Georgia 30326-4302
(404) 856-9113 (office)
(404) 591-1801 (fax)
bmildenhall@friedgoldberg.com

GEORGIA, MUSCOGEE COUNTY
SUPERIOR/STATE COURT
eFILED
7/8/2022 11:46 AM
DANIELLE F. FORTE, CLERK

## IN THE STATE COURT OF MUSCOGEE COUNTY
## STATE OF GEORGIA

AMY SATTERFIELD AND JERROD
SATTERFIELD,

*Plaintiffs,*

v.

MIDWAY EXPRESS LTD.,

*Defendant.*

Civil Action

File No. _SC2022CV000891_____

JURY TRIAL DEMANDED

## PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS TO
## DEFENDANT MIDWAY EXPRESS LTD.

COMES NOW Plaintiff in the above-captioned lawsuit and pursuant to O.C.G.A. § 9-11-36 hereby propounds the following Request for Admissions to Defendant MIDWAY EXPRESS LTD. ("MIDWAY EXPRESS") for response pursuant to the rules of the Georgia Civil Practice Act and as required by law.

### DEFINITIONS

As used herein, the terms listed below are defined as follows:

1. "**Subject Collision**" means the collision described in the Complaint.

2. "**You**," "**Your**," or "**MIDWAY EXPRESS**" means Defendant MIDWAY EXPRESS LTD. and includes its agents, representatives, attorneys, and anyone who, at the relevant times, was acting or purporting to act for it or on its behalf.

3. "**QUENTIN GRAY**" means your driver QUENTIN GRAY.

4. "**Plaintiff**" means the Plaintiff herein, namely AMY SATTERFIELD.

## REQUESTS FOR ADMISSION

1.

MIDWAY EXPRESS is a proper party to this lawsuit.

2.

MIDWAY EXPRESS is properly identified in this lawsuit.

3.

Service upon MIDWAY EXPRESS was legal and proper in this case.

4.

Service upon MIDWAY EXPRESS was legally sufficient in this case.

5.

MIDWAY EXPRESS is subject to the jurisdiction of this Court.

6.

Venue is proper as to MIDWAY EXPRESS in this Court.

7.

QUENTIN GRAY operated the truck that was involved in the Subject Collision.

8.

QUENTIN GRAY was an employee of MIDWAY EXPRESS at the time of the Subject
Collision.

9.

QUENTIN GRAY was an agent of MIDWAY EXPRESS at the time of the Subject
Collision.

10.

QUENTIN GRAY was acting within the course and scope of his employment with

MIDWAY EXPRESS at the time of the Subject Collision.

11.

QUENTIN GRAY was acting within the course and scope of his agency with MIDWAY EXPRESS at the time of the Subject Collision.

12.

At the time of the Subject Collision, QUENTIN GRAY was working under the control of MIDWAY EXPRESS.

13.

At the time of the Subject Collision, QUENTIN GRAY was working under MIDWAY EXPRESS'S DOT authority to operate as a motor carrier.

14.

At the time of the Subject Collision, QUENTIN GRAY had MIDWAY EXPRESS's permission to operate the truck.

15.

At the time of the Subject Collision, QUENTIN GRAY was operating the tractor consistent with how he was trained by MIDWAY EXPRESS

16.

At the time of the Subject Collision, QUENTIN GRAY was operating the truck contrary to the training he received by MIDWAY EXPRESS

17.

At the time of the Subject Collision, QUENTIN GRAY was operating the truck in accord with the policies and procedures of MIDWAY EXPRESS.

18.

At the time of the Subject Collision, QUENTIN GRAY was violating company policies and procedures of MIDWAY EXPRESS.

19.

At the time of the Subject Collision, QUENTIN GRAY was acting in a reasonable and prudent manner in turning the truck.

20.

On the day of the Subject Collision, the truck that QUENTIN GRAY was operating was equipped with a forward-facing video recording system.

21.

On the day of the Subject Collision, the truck that QUENTIN GRAY was operating was equipped with an in-cab video recording system.

22.

AMY SATTERFIELD did nothing inappropriate to cause or contribute the Subject Collision.

23.

QUENTIN GRAY is fully responsible for causing the Subject Collision.

24.

QUENTIN GRAY is solely responsible for causing the Subject Collision.

25.

No one other than QUENTIN GRAY is responsible for the Subject Collision.

26.

MIDWAY EXPRESS does not blame AMY SATTERFIELD in any way for causing the

Subject Collision.

27.

MIDWAY EXPRESS INC. does not blame anyone other than QUENTIN GRAY for causing the Subject Collision.

28.

As a result of this Subject Collision, AMY SATTERFIELD suffered personal injuries.

29.

At the time of the Subject Collision, QUENTIN GRAY was subject to Georgia traffic laws.

30.

QUENTIN GRAY was terminated as a result of the Subject Collision.

31.

QUENTIN GRAY was disciplined as a result of the Subject Collision.

32.

The truck that QUENTIN GRAY was operating at the time of the Subject Collision met the definition of a commercial motor vehicle under Georgia law and/or the Federal Motor Carrier Safety Regulations.

33.

MIDWAY EXPRESS had a duty to properly qualify QUENTIN GRAY before allowing him to operate the truck.

34.

QUENTIN GRAY was not properly qualified to operate the truck at the time of the Subject Collision.

35.

MIDWAY EXPRESS performed a review of the Subject Collision in the ordinary and normal course of its business.

36.

As the employer of QUENTIN GRAY, MIDWAY EXPRESS is fully and completely responsible for all damages suffered by the Plaintiff, which have first been proven to have been proximately caused the negligence of QUENTIN GRAY.

37.

QUENTIN GRAY is fully and completely responsible for all damages suffered by the Plaintiff, which have first been proven to have been proximately caused the negligence of MIDWAY EXPRESS.

38.

QUENTIN GRAY was using his cellphone at the time of the Subject Collision.

39.

QUENTIN GRAY was receiving a text message at the time of the Subject Collision.

40.

QUENTIN GRAY was sending a text message at the time of the Subject Collision.

41.

QUENTIN GRAY was holding his cellphone at the time of the Subject Collision.

42.

QUENTIN GRAY was using his cellphone to receive or place a call at the time of the Subject Collision.

43.

QUENTIN GRAY was using Bluetooth at the time of the Subject Collision in order to

have a cellphone call.

Respectfully submitted, this 8th day of July, 2022.

**FRIED GOLDBERG LLC**

By: *BRIANT G. MILDENHALL*

**JOSEPH A. FRIED**
Georgia Bar No. 277251
**BRIANT G. MILDENHALL**
Georgia Bar No. 790507
*Attorneys for Plaintiff*

3550 Lenox Road, N.E., Suite 1500
Atlanta, Georgia 30326-4302
(404) 591-1800 (office)
(404) 591-1801 (fax)
joe@friedgoldberg.com
bmildenhall@friedgoldberg.com

GEORGIA, MUSCOGEE COUNTY
SUPERIOR/STATE COURT
eFILED
7/8/2022 11:46 AM
DANIELLE F. FORTE, CLERK

## IN THE STATE COURT OF MUSCOGEE COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **AMY SATTERFIELD AND JERROD SATTERFIELD,** | |
| *Plaintiffs,* | Civil Action |
| | File No. ___SC2022CV000891___ |
| v. | |
| **MIDWAY EXPRESS LTD.,** | JURY TRIAL DEMANDED |
| *Defendant.* | |

### PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS TO DEFENDANT MIDWAY EXPRESS LTD.

COMES NOW Plaintiff in the above-captioned lawsuit and pursuant to O.C.G.A. § 9-11-36 hereby propounds the following Request for Admissions to Defendant MIDWAY EXPRESS LTD. ("MIDWAY EXPRESS") for response pursuant to the rules of the Georgia Civil Practice Act and as required by law.

### DEFINITIONS

As used herein, the terms listed below are defined as follows:

1. "**Subject Collision**" means the collision described in the Complaint.

2. "**You**," "**Your**," or "**MIDWAY EXPRESS**" means Defendant MIDWAY EXPRESS LTD. and includes its agents, representatives, attorneys, and anyone who, at the relevant times, was acting or purporting to act for it or on its behalf.

3. "**QUENTIN GRAY**" means your driver QUENTIN GRAY.

4. "**Plaintiff**" means the Plaintiff herein, namely AMY SATTERFIELD.

## REQUESTS FOR ADMISSION

1.

MIDWAY EXPRESS is a proper party to this lawsuit.

2.

MIDWAY EXPRESS is properly identified in this lawsuit.

3.

Service upon MIDWAY EXPRESS was legal and proper in this case.

4.

Service upon MIDWAY EXPRESS was legally sufficient in this case.

5.

MIDWAY EXPRESS is subject to the jurisdiction of this Court.

6.

Venue is proper as to MIDWAY EXPRESS in this Court.

7.

QUENTIN GRAY operated the truck that was involved in the Subject Collision.

8.

QUENTIN GRAY was an employee of MIDWAY EXPRESS at the time of the Subject Collision.

9.

QUENTIN GRAY was an agent of MIDWAY EXPRESS at the time of the Subject Collision.

10.

QUENTIN GRAY was acting within the course and scope of his employment with

MIDWAY EXPRESS at the time of the Subject Collision.

11.

QUENTIN GRAY was acting within the course and scope of his agency with MIDWAY EXPRESS at the time of the Subject Collision.

12.

At the time of the Subject Collision, QUENTIN GRAY was working under the control of MIDWAY EXPRESS.

13.

At the time of the Subject Collision, QUENTIN GRAY was working under MIDWAY EXPRESS'S DOT authority to operate as a motor carrier.

14.

At the time of the Subject Collision, QUENTIN GRAY had MIDWAY EXPRESS's permission to operate the truck.

15.

At the time of the Subject Collision, QUENTIN GRAY was operating the tractor consistent with how he was trained by MIDWAY EXPRESS

16.

At the time of the Subject Collision, QUENTIN GRAY was operating the truck contrary to the training he received by MIDWAY EXPRESS

17.

At the time of the Subject Collision, QUENTIN GRAY was operating the truck in accord with the policies and procedures of MIDWAY EXPRESS.

18.

At the time of the Subject Collision, QUENTIN GRAY was violating company policies and procedures of MIDWAY EXPRESS.

19.

At the time of the Subject Collision, QUENTIN GRAY was acting in a reasonable and prudent manner in turning the truck.

20.

On the day of the Subject Collision, the truck that QUENTIN GRAY was operating was equipped with a forward-facing video recording system.

21.

On the day of the Subject Collision, the truck that QUENTIN GRAY was operating was equipped with an in-cab video recording system.

22.

AMY SATTERFIELD did nothing inappropriate to cause or contribute the Subject Collision.

23.

QUENTIN GRAY is fully responsible for causing the Subject Collision.

24.

QUENTIN GRAY is solely responsible for causing the Subject Collision.

25.

No one other than QUENTIN GRAY is responsible for the Subject Collision.

26.

MIDWAY EXPRESS does not blame AMY SATTERFIELD in any way for causing the

Subject Collision.

27.

MIDWAY EXPRESS INC. does not blame anyone other than QUENTIN GRAY for causing the Subject Collision.

28.

As a result of this Subject Collision, AMY SATTERFIELD suffered personal injuries.

29.

At the time of the Subject Collision, QUENTIN GRAY was subject to Georgia traffic laws.

30.

QUENTIN GRAY was terminated as a result of the Subject Collision.

31.

QUENTIN GRAY was disciplined as a result of the Subject Collision.

32.

The truck that QUENTIN GRAY was operating at the time of the Subject Collision met the definition of a commercial motor vehicle under Georgia law and/or the Federal Motor Carrier Safety Regulations.

33.

MIDWAY EXPRESS had a duty to properly qualify QUENTIN GRAY before allowing him to operate the truck.

34.

QUENTIN GRAY was not properly qualified to operate the truck at the time of the Subject Collision.

35.

MIDWAY EXPRESS performed a review of the Subject Collision in the ordinary and normal course of its business.

36.

As the employer of QUENTIN GRAY, MIDWAY EXPRESS is fully and completely responsible for all damages suffered by the Plaintiff, which have first been proven to have been proximately caused the negligence of QUENTIN GRAY.

37.

QUENTIN GRAY is fully and completely responsible for all damages suffered by the Plaintiff, which have first been proven to have been proximately caused the negligence of MIDWAY EXPRESS.

38.

QUENTIN GRAY was using his cellphone at the time of the Subject Collision.

39.

QUENTIN GRAY was receiving a text message at the time of the Subject Collision.

40.

QUENTIN GRAY was sending a text message at the time of the Subject Collision.

41.

QUENTIN GRAY was holding his cellphone at the time of the Subject Collision.

42.

QUENTIN GRAY was using his cellphone to receive or place a call at the time of the Subject Collision.

43.

QUENTIN GRAY was using Bluetooth at the time of the Subject Collision in order to

have a cellphone call.

Respectfully submitted, this 8th day of July, 2022.

FRIED GOLDBERG LLC

By: *BRIANT G. MILDENHALL*

JOSEPH A. FRIED
Georgia Bar No. 277251
BRIANT G. MILDENHALL
Georgia Bar No. 790507
*Attorneys for Plaintiff*

3550 Lenox Road, N.E., Suite 1500
Atlanta, Georgia 30326-4302
(404) 591-1800 (office)
(404) 591-1801 (fax)
joe@friedgoldberg.com
bmildenhall@friedgoldberg.com

GEORGIA, MUSCOGEE COUNTY
SUPERIOR/STATE COURT
eFILED
7/8/2022 11:46 AM
DANIELLE F. FORTE, CLERK

### IN THE STATE COURT OF MUSCOGEE COUNTY
### STATE OF GEORGIA

AMY SATTERFIELD AND JERROD
SATTERFIELD,

*Plaintiffs,*

v.

MIDWAY EXPRESS LTD.,

*Defendant.*

Civil Action

File No. _SC2022CV000891_

JURY TRIAL DEMANDED

### PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT MIDWAY EXPRESS LTD.

COMES NOW Plaintiff and submits the following Request for Production of Documents to Defendant MIDWAY EXPRESS LTD. (hereinafter "MIDWAY EXPRESS"), pursuant to Rule 34 of the Georgia Civil Practice Act, for answers and production of documents as provided by law.

### DEFINITIONS

As used herein, the terms listed below are defined as follows:

1.    The term "**Document**" as used herein shall be given a very broad definition to include every type of paper, writing, data, record, graphic, drawing, photograph, audio recording and video recording. The term includes material in all forms, including printed, written, recorded, or other. The term includes all files, records and data contained in any computer system, computer component and/or computer storage (e.g., hard drive, disc, magnetic tape, backup system, etc.). This term includes, but is not limited to, correspondence, reports, meeting minutes, memoranda, stenographic or handwritten notes, diaries, notebooks, account books, orders, invoices, statements, bills, checks, vouchers, purchase orders, studies, surveys, charts, maps, analyses, publications, books, pamphlets, periodicals, catalogues, brochures, schedules, circulars, bulletins, notices,

instructions, manuals, journals, e-mails, e-mail attachments, data sheets, work sheets, statistical compilations, data processing cards, microfilms, computer records (including printouts, disks or other magnetic storage media), tapes, photographs (positive or negative prints), drawings, films, videotapes, hard drive recordings, pictures, and voice recordings.  Plaintiff expressly intends for the term "Document" to include every copy of such writing, etc. when such copy contains any commentary or notation whatsoever that does not appear on the original and any attachments or exhibits to the requested document or any other documents referred to in the requested document or incorporated by reference.

2.   "**Person**" means any natural person, corporation, partnership, proprietorship, association, organization, group of persons, or any governmental body or subdivision thereof.

3.   "**Similar**" shall have the meaning given in the American Heritage Dictionary, which is "showing some resemblance; related in appearance or nature; alike but not identical."  As used here, the word "similar" shall not be limited as if modified by the word "substantially" and shall not mean "the same". If you limit the information provided because you use another interpretation of the word "similar," please state the interpretation you are using and reveal the nature of the information withheld.

4.   The terms "**and**" as well as "**or**" shall be each construed conjunctively and disjunctively as necessary to bring within the scope of each interrogatory and request for documents all information and documents that might otherwise be construed to be outside its scope. The term "**and/or**" shall be construed likewise.

5.   Whenever necessary to bring within the scope of an interrogatory or request for production of documents any information or document that might otherwise be construed to be outside its scope: (i) the use of a verb in any tense shall be construed as the use of the verb in all

other tenses; (ii) the use of the singular shall be construed as the use of the plural and vice versa; and (iii) **"any"** includes "all," and **"all"** includes "any."

6.      With regard to any term used herein that is deemed by the responding party as being ambiguous or vague, a term shall be construed in its broadest sense to encompass all reasonable definitions of that term.

7.      "**Subject Collision**" means the collision described in the Complaint.

8.      "**You**," "**Your**," or "**MIDWAY EXPRESS**" means Defendant MIDWAY EXPRESS LTD., and includes its parents, subsidiaries, all related corporate entities, agents, representatives, attorneys, and anyone who, at the relevant times, was acting or purporting to act for it or on its behalf.

9.      "**QUENTIN GRAY**" means your driver QUENTIN GRAY.

10. "**Plaintiff**" means the Plaintiff herein, namely AMY SATTERFIELD.

## DOCUMENT REQUESTS

### GENERAL

**REQUEST NO. 1:**   All documents utilized by you in any way in responding to Plaintiff's First Interrogatories to Defendant MIDWAY EXPRESS.

**REQUEST NO. 2:**   Each liability insurance policy (and declarations page for each policy) that provides or may provide coverage for damages sustained in the Subject Collision. This includes all primary, excess, and umbrella policies.

**REQUEST NO. 3:**   Copies of all reservation of rights letters and/or agreements regarding insurance coverage for the Subject Collision.

**REQUEST NO. 4:**   All documents that you have exchanged with your insurance company evidencing your application for insurance.

**REQUEST NO. 5:**   All documents provided to and received from your insurance company regarding QUENTIN GRAY's driving history, criminal history, claims history, training, qualification to drive and/or insurability.

**REQUEST NO. 6:**   All documents and driver training resources provided or made available to you by your insurance company.

### DRIVER

**REQUEST NO. 7:**   All documents setting forth the relationship between QUENTIN GRAY and MIDWAY EXPRESS. This includes, but is not limited to all leases, employment contracts, and independent contract agreements and other contracts, agreements, memorandum, and the like.

**REQUEST NO. 8:**   A complete copy of the contents of each and every file (whether maintained physically or electronically), regardless of what the file is called, regarding or addressing QUENTIN GRAY in any way including but not limited to QUENTIN GRAY'S driver qualification file, driver investigation file, driver history file, hiring file, personnel file, employment file, and any other documents that demonstrate compliance with federal and/or state driver qualification laws and regulations. The requested documents include, but are not limited to all documents related to the hiring, training, orientation, supervision, and discipline of QUENTIN GRAY, all annual driver history inquires for QUENTIN GRAY, all annual statements of violations from QUENTIN GRAY, all medical certificates for QUENTIN GRAY, all pre-employment drug and alcohol tests and results for QUENTIN GRAY, all post-accident drug and alcohol tests and results for QUENTIN GRAY, all random drug and alcohol test results for QUENTIN GRAY, all documents reflecting any notice of violation of ordinances/statutes/laws/regulations for QUENTIN GRAY, all documents reflecting investigation into QUENTIN GRAY's past

employers, all road tests for QUENTIN GRAY, all documents relating to any motor vehicle incident or collision of any kind involving QUENTIN GRAY, copies of any complaints received by you related to QUENTIN GRAY, and all documents reflecting any disciplinary, counseling or corrective action taken related to QUENTIN GRAY.

**REQUEST NO. 9:**   All documents that relate in any way to any orientation or training provided by MIDWAY EXPRESS to QUENTIN GRAY. This includes but is not limited to all documents that show all training received by QUENTIN GRAY; when, where and who provided the training, and all materials used for training.

**REQUEST NO. 10:** All documents that relate in any way to your recruiting of QUENTIN GRAY.

**REQUEST NO. 11:** All documents (a) explaining how QUENTIN GRAY was compensated for the one month leading up to and including the date of the Subject Collision and extending one week after the date of the Subject Collision; and (b) showing any detention of wages over the same time period.

**REQUEST NO. 12:** A copy of the front and back of every driver's license issued to QUENTIN GRAY (regardless of name used) in your possession, custody and/or control.

**REQUEST NO. 13:** For each communication device (e.g., cell phones, PDAs, smartphones, texting and e-mailing devices, etc.) that was in the truck that QUENTIN GRAY was operating at the time of the Subject Collision, produce all documents reflecting usage and billing for the time period time period beginning 48 hours before the Subject Collision and ending 48 hours after the Subject Collision. This includes all devices, whether owned by QUENTIN GRAY or not, and whether it was in use at the time of the Subject Collision or not.

**REQUEST NO. 14:**  All documents prepared by QUENTIN GRAY that describes the Subject Collision or the circumstances leading up to the Subject Collision.

**REQUEST NO. 15:**  All documents evidencing any evaluation of the driving abilities, safety, and/or performance of QUENTIN GRAY that has not been produced in response to the preceding Requests.

### HOURS OF SERVICE-RELATED DOCUMENTS

**REQUEST NO. 16:**  A copy of all QUENTIN GRAY's hours of service logs and any other driving logs, paystubs, settlement statements and/or time sheets for the period beginning 30 days before the Subject Collision and ending 7 days following the Subject Collision.

**REQUEST NO. 17:**  In addition to the documents responsive to the preceding Request, produce all documents in your possession custody or control that demonstrate what QUENTIN GRAY was doing for the time period beginning 7 days before the Subject Collision and ending 1 day following the Subject Collision. The requested documents include all documents that a motor carrier division officer might use to audit the logs of this driver, including, but not but are not limited to:

a.  All documents evidencing hours of service not produced above (e.g., daily logs and time sheets as well as log audits and letters regarding hours of service);

b.  All documents that could be used to check the accuracy of Hours-of-Service logs and/or time sheets;

c.  All documents related to trips (including driver's trip envelopes, trip reports, work reports, bills of lading, manifests, cargo documents of any kind, load documents of any kind, loading and unloading records of any kind, load detention records of any kind, freight bills, pick-up and delivery records of any kind, directions (e.g., routes to take),

instructions (delivery notes, times, special handling), driver's trip check and settlement sheets, dispatch records, mileage reports, weight and scale records, and receipts for fuel, food, tolls, lodging, permits, repairs, and/or other purchases and expenses of any kind whether reimbursable or not, final trip accounting documents and printouts, as well as any and all reports and/or summaries of any kind referencing the above information);

d.  All documents evidencing any and all stops; and

e.  All driver call-in reports and any other documentation of any communications between you and QUENTIN GRAY.

**PLEASE NOTE – NOTHING IN THESE REQUESTS SHOULD BE READ TO MEAN THAT PLAINTIFF IS NOT INTERESTED IN DEFENDANT MANTAINING ALL INFORMATION REGARDING ALL COMMERCIAL DRIVING ACTIVITIES FOR SIX MONTHS PRECEDING THE INCIDENT AT ISSUE AND SINCE THE INCIDENT AT ISSUE. THESE MATERIALS SHOULD BE RETAINED IN THE EVENT THEY ARE REQUESTED.**

**REQUEST NO. 18:**  A copy of all audits and summaries of QUENTIN GRAY's hours of service covering the period beginning two years prior to the Subject Collision and ending 7 days following the Subject Collision.

### Vehicle Information

**REQUEST NO. 19:**  For the truck involved in the Subject Collision, produce the following documents:

a.  Title;

b.  Registration;

c.  Operator's manual;

d.  Maintenance Schedules;

e.  All documents evidencing maintenance performed on the truck at any time

within 6 months before the Subject Collision;

f.     All documents evidencing any inspections of the truck during the 6 months before the Subject Collision;

g.     All documents evidencing any repairs and/or modifications to the truck at any time within 6 months before the Subject Collision;

h.     All documents evidencing any repairs made to the truck as a result of the subject collision and entities paying for the same (including insurance submissions);

i.     Documents evidencing transport of the truck;

j.     All leases involving the vehicle;

k.     Documents evidencing the purchase of the vehicle;

l.     Documents evidencing the sale of the vehicle if it has been sold;

m.     Documents evidencing mileage and weight at time of the Subject Collision; and

n.     Copies of each and every logbook, ledger, file or the like maintained for any reason regarding the vehicle.

**REQUEST NO. 20:**  All data, reports, and/or audio/video (whether or not downloaded or retrieved) captured, monitored, transmitted, or generated by all onboard vehicle and/or driver performance monitoring systems (e.g., engine control module (ECM), event data recorder (EDR), Sensing Diagnostic Module (SDM), drive-train or transmission control unit, power steering unit, airbag module, ABS or other brake system, or any EOBR), including but not limited to breadcrumb data/reports, log maps, GPS location and speed data, speed profiles, single event detail, onboard event recording detail. This includes all such data, reports and/or audio/video available, whether

utilized by Defendant or not. Please produce both the printout of the data and the data file in its original format. This request is intended to cover data for as long as it was recorded before, during, and after the Subject Collision.

**REQUEST NO. 21:** If the truck at issue was equipped with a lane departure warning system or collision warning system (e.g., VORAD), please produce the printout of the downloaded data and to the degree possible produce the data file in its original format.

**REQUEST NO. 22:** All documents exchanged between Defendants QUENTIN GRAY and MIDWAY EXPRESS LTD. for the time period beginning 10 days prior to the Subject Collision through the present, that evidence or address the subject collision and/or insurance coverage for the same.

**REQUEST NO. 23:** All communications and transmissions between QUENTIN GRAY and MIDWAY EXPRESS that were transmitted through any system on-board the truck involved in the Subject Collision for the period beginning 30 days before the Subject Collision and ending seven days after the Subject Collision. This includes any and all satellite or cellular systems, regardless of manufacturer, and includes, without limitation, all electronic on-board recorders (EOBRs) and systems such as those made available by Samsara, Qualcomm, TransCore, SkyBitz, Fluensee, Teletrac, Lat-Lon, Telogis, GeoLogic, Cheetah, Xata, PeopleNet and other transportation service and product providers.

**REQUEST NO. 24:** If the truck was equipped with any on-board audio or video recording or monitoring devices and/or any other driver or driver safety monitoring system, please produce everything that was retrieved or could be retrieved from such devices and systems. This includes, but is not limited to, all documentation related to any supervision, counseling, coaching, training, or discipline of QUENTIN GRAY (whether conducted by the Defendant motor carrier or

a designated third-party) initiated by data, reports, and/or video obtained through any on-board monitoring/recording system. This also includes the data, reports, and/or audio/video utilized/reviewed to initiate said supervision, counseling, coaching, training, or discipline, including but not limited to alerts initiated/sent/received to QUENTIN GRAY and/or Defendant MIDWAY EXPRESS for incidents of speeding, harsh braking, harsh cornering, harsh acceleration, following too close, lane departures, collision warning/mitigation and/or any hours of service or fatigue related incidents, as well as risk management reports, exceptions summaries and exceptions details reports (including but not limited to speeding, harsh braking, harsh cornering, harsh acceleration, following too close, lane departures, collision warning/mitigation), messaging reports, risk scores, driver score cards, predictive models or any similarly named data and/or reports, and any data/reports utilized by Defendant MIDWAY EXPRESS in their real-time, hourly, daily, weekly, monthly, bi-annual and/or annual supervision of their drivers. This includes all stated data, reports and/or video available, whether utilized by Defendant MIDWAY EXPRESS or not in supervision, counseling, coaching, training, or discipline of QUENTIN GRAY. Please produce both the printout of the data and the data file in its original format of everything that was retrieved or could be retrieved through any on-board system(s). This request is intended to cover data for as long as it was recorded before during and after the Subject Collision.

**REQUEST NO. 25:** To the degree that it has not been produced in response to other Requests above, produce all data of any kind that was recovered from the truck.

**REQUEST NO. 26:** All out of service reports or violations concerning the truck involved in the Subject Collision from the period beginning two years prior to the Subject Collision through present. This request includes any supplements, responses, amendments, and dispositions regarding any violation.

**REQUEST NO. 27:**  All documents evidencing damage to any vehicle or other property as a result of the Subject Collision, including but not limited to repair estimates, appraisals, purchase invoices, repair bills, and checks or drafts reflecting payment for repair or replacement, and any other documents concerning or establishing the value of any item of property before or after the Subject Collision.

**REQUEST NO. 28:**  All documents given to any person or entity, including any insurance company in return for payment in whole or in part for property damage, e.g., loan receipt*(s)*, release*(s)*, assignment*(s)*, etc.

**REQUEST NO. 29:**  For the truck involved in the Subject Collision, all Driver Vehicle Inspection Reports (DVIR) from the period beginning six months before the Subject Collision and ending one week after the Subject Collision.

## LOAD

**REQUEST NO. 30:**  All documents that relate to the load being hauled by QUENTIN GRAY at the time of the Subject Collision, including, by way of example and without limitation, all manifests, bills of lading, weight receipts, dispatch documents, content summaries, and documents that address the contents, ownership, pick-up, detainment, sale/purchase and/or delivery of the load.

**REQUEST NO. 31:**  All documents evidencing who, how and when the load was ordered, brokered, and/or shipped.

## SUBJECT COLLISION

**REQUEST NO. 32:**  All documents related to any investigation done by or on behalf of Defendant MIDWAY EXPRESS of the scene of the Subject Collision.

**REQUEST NO. 33:**  All documents authored by anyone working for or on behalf of

MIDWAY EXPRESS (other than its retained attorneys) that set forth any facts relating to the Subject Collision.

**REQUEST NO. 34:**  All documents that explain what caused the Subject Collision.

**REQUEST NO. 35:**  All documents assessing preventability, DOT recordability, and/or avoid ability of the Subject Collision and/or factors contributing to the cause of the Subject Collision.

**REQUEST NO. 36:**  If the scene of the Subject Collision was mapped (with a total station or other survey equipment) after the Subject Collision, please produce a copy of the survey data files and all diagrams produced therefrom.

**REQUEST NO. 37:**  Color or digital file copies of all photographs, video, computer simulations, and any other documents depicting:

      a.      Any vehicle involved in the Subject Collision;

      b.      Any person involved in the Subject Collision;

      c.      The scene of the Subject Collision;

      d.      Any evidence (roadway markings or other) relevant to the Subject Collision; and/or

      e.      Any other person, place, or thing relevant to the Subject Collision or which supports and refutes any of your contentions.

**REQUEST NO. 38:**  All reports relating to the Subject Collision including those prepared by QUENTIN GRAY and those prepared by anyone working for or on behalf of Defendant MIDWAY EXPRESS LTD. (except lawyers).

**REQUEST NO. 39:**  All correspondence and other communications (including e-mail) that you have had with any person other than your lawyer involving the Subject Collision.

**REQUEST NO. 40:**  All tapes and transcripts of conversations, interviews, and/or statements of any person who purports to know any facts or circumstances relevant to the issues of liability, comparative fault, causation and/or damages in this case (except privileged documents).

**REQUEST NO. 41:**  If an Accident Review Board, Accident Review Committee, or similar entity or person(s) at MIDWAY EXPRESS reviewed the Subject Collision, produce the following:

    a.    A copy of all documents (as defined) and other materials of any kind reviewed by said board or entity;

    b.    A copy of all reports and documents (as defined) of any kind generated by said board or entity;

    c.    Documents evidencing who was on the board;

    d.    Documents evidencing all criteria for review; and

    e.    Determination of preventability and all other conclusions reached by said board or entity.

GOVERNMENTAL CONTACT AND INTERVENTION

**REQUEST NO. 42:**  Copies of all documents sent to or received from any governmental agency regarding the Subject Collision, the driver involved in the Subject Collision, or any subject that is part of the basis of this lawsuit.

**REQUEST NO. 43:**  Copy of all documents and communications of any kind related to any CSA Intervention against your company in the past two years.

**REQUEST NO. 44:**  All documents evidencing the revocation or loss of MIDWAY EXPRESS'S DOT authority to operate commercial motor vehicles at any time.

<u>**POLICY AND PROCEDURES**</u>

**REQUEST NO. 45:**  All Defendant MIDWAY EXPRESS'S policies, procedures, rules, guidelines, directives, bulletins, manuals, handbooks, and instructions that were in effect at the time of the Subject Collision, relating to:

  a.  Working for or with MIDWAY EXPRESS generally (e.g., employee manual or handbook);

  b.  Operation of any motor vehicle (e.g., driving manuals or handbooks, and the like);

  c.  Operation of a commercial vehicle;

  d.  Driving safety;

  e.  Defensive driving;

  f.  Compliance with federal and state laws and regulations;

  g.  Accident investigation;

  h.  Accident review boards;

  i.  Determination of preventability of accidents;

  j.  Hiring, training and supervising drivers; and

  k.  Disciplinary actions;

**REQUEST NO. 46:**  The hiring criteria in effect at the time QUENTIN GRAY was hired and at the time of the Subject Collision.

**REQUEST NO. 47:**  All documents that QUENTIN GRAY signed to prove that QUENTIN GRAY received and/or agreed to be bound by any policies, procedures, rules, guidelines and/or standards of Defendant MIDWAY EXPRESS.

**REQUEST NO. 48:**  To the degree that Defendant MIDWAY EXPRESS has any rules,

policies, procedures, guidelines, driving manuals, employee handbooks or manuals, or other similar documents that were not provided to QUENTIN GRAY before the Subject Collision, please produce them now.

**REQUEST NO. 49:**  A complete copy of, or in the alternative, access to, each driver safety training film, video, videotape, videocassette, audio cassette, computer program, simulator, driver diagnostic record or test, maintained by your company, or used by Defendant MIDWAY EXPRESS, its personnel, agents, or employees during the year of the Subject Collision and three years prior.

**REQUEST NO. 50:**  All industry and/or other guidelines and/or practices that you rely upon to support your contentions in this case.

**REQUEST NO. 51:**  Print screens of software, web portal, or driving center pages as they were available to the Defendant on the date of the subject incident.

**REQUEST NO. 52:**  Print screens of report dropdown menus and screens utilized for setting parameters for reports and/or alerts.

**REQUEST NO. 53:**  All documentation of Defendant MIDWAY EXPRESS'S purchase of hardware, installation, and software for all onboard systems, contracts, agreements, and addendums to contracts/agreements.

**REQUEST NO. 54:**  All documentation of Defendant MIDWAY EXPRESS'S training provided/received on all onboard systems including but not limited to fleet manager's and driver's user guides and operational manuals, on-site and/or remote training provided by telematics provider.

## TRUCKING COMPANY

**REQUEST NO. 55:** A copy of any documents showing the hierarchy of managerial positions at Defendant MIDWAY EXPRESS and who occupied such positions as of the time of the Subject Collision and presently.

**REQUEST NO. 56:** A copy of each document (including articles and presentations) prepared and/or presented by any Defendant MIDWAY EXPRESS representative relating to the safe operation of a commercial motor vehicle and/or the safe operation of a MIDWAY EXPRESS in the past five years.

**REQUEST NO. 57:** All company newsletters distributed during the time period beginning two years before the Subject Collision through the present.

**REQUEST NO. 58:** All lease and trip lease contracts applicable to QUENTIN GRAY and/or any vehicle involved in the Subject Collision.

**REQUEST NO. 59:** All contracts under which your company was operating the truck in question at the time of the Subject Collision.

**REQUEST NO. 60:** All of Defendant MIDWAY EXPRESS'S motor vehicle accident registers and records for the five years preceding the Subject Collison date through the present.

**REQUEST NO. 61:** All transcripts or recordings of all depositions of corporate designees for Defendant MIDWAY EXPRESS given in the past five years in cases where it was alleged that a driver working for Defendant MIDWAY EXPRESS was involved in a collision resulting in the injury or death of another person.

**REQUEST NO. 62:** All documents putting any third party on notice of a claim arising from the Subject Collision

**REQUEST NO. 63:** All correspondence and other communication of any kind between

you and any other Defendant to this Action.

<u>MISCELLANEOUS</u>

**REQUEST NO. 64:**  With respect to each expert witness who may provide testimony at the trial of this case, provide:

   a.   A copy of all documents (as that term is defined above) and items of any kind produced <u>to</u> said expert;

   b.   A copy of all documents (as that term is defined above) and items of any kind generated or produced <u>by</u> said expert;

   c.   A copy of the entire file of said expert;

   d.   A current résumé or curriculum vitae for said expert; and

   e.   All billing records and work logs for said expert.

**REQUEST NO. 65:**  All documents and other materials, which support any contention that the Subject Collision was the fault of anyone other than the Defendants.

**REQUEST NO. 66:**  All diagrams, graphs, illustrations, photographs, charts, pictures, models, blow-ups, or any other document or thing, including electronically created charts, animations, or data that you intend to utilize as an exhibit, demonstrative exhibit, or aid in the trial of this case not previously supplied.

**REQUEST NO. 67:**  All documents or things that you contend is evidence, proof, or support of your claims on any issue of negligence or causation as to the Subject Collision, including but not limited to admissions of fault, engineering analysis, scientific tests, and official or unofficial reports.

**REQUEST NO. 68:**  All documents or things that you contend evidences and/or supports your denial of each Request for Admissions served upon you in this matter.

**PLAINTIFF**

**REQUEST NO. 69:**  A copy of all documents obtained by you relating to PLAINTIFF
AMY SATTERFIELD.

**REQUEST NO. 70:**  A copy of any and all medical records obtained by you relating to
PLAINTIFF AMY SATTERFIELD.

**REQUEST NO. 71:**  A copy of any and all billing records obtained by you relating to
PLAINTIFF AMY SATTERFIELD.

**REQUEST NO. 72:**  A copy of all responses to any subpoena issued or served by you in
this matter.

**REQUEST NO. 73:**  A copy of any documents obtained by you from any third-party
relating to this matter or PLAINTIFF AMY SATTERFIELD.

**REQUEST NO. 74:**  If any surveillance has been undertaken by or on behalf of
MIDWAY EXPRESS, produce a copy of all reports, photographs, video, and anything else
generated through that investigation.

Respectfully submitted, this 8th day of July, 2022.

**FRIED GOLDBERG LLC**

By: _____

**BRIANT G. MILDENHALL**
Georgia Bar No. 790507
*Attorney for Plaintiff*

3550 Lenox Road, N.E., Suite 1500
Atlanta, Georgia 30326-4302
(404) 856-9113 (office)
(404) 591-1801 (fax)
bmildenhall@friedgoldberg.com